UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


BRADLEY PETERSON,

           Plaintiff,                        Case No. 12-CV-11460
                                              HON. MARK A. GOLDSMITH

vs.


COUNTY OF MONROE, et al.,

           Defendants.

_____/


**OPINION AND ORDER (1) ACCEPTING THE RECOMMENDATION CONTAINED IN THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION DATED DECEMBER 16, 2013 (DKT. 49), (2) OVERRULING PLAINTIFF'S OBJECTIONS (DKT. 52), (3) GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. 32), (4) DENYING PLAINTIFF'S MOTION TO AMEND (DKT. 27), (5) OVERRULING PLAINTIFF'S MISCELLANEOUS OBJECTIONS (DKTS. 42, 46), and (6) DISMISSING THE CASE WITH PREJUDICE**

## I.    INTRODUCTION

In this case, Plaintiff Bradley Peterson, proceeding pro se, brings claims alleging violations of his federal constitutional rights under the Eighth and Fourteenth Amendments, as well as state-law gross negligence claims.[1]  During the events at issue in this matter, Plaintiff was being held at Monroe County Jail as a pretrial detainee, see Booking Sheet (Dkt. 32-2); Defendants Tim Lee and Julie Massengill were corrections officers and Defendant Ramona

---

[1] The complaint (Dkt. 1) brings the following counts: (i) use of excessive force in violation of the Fourteenth Amendment; (ii) deliberate indifference to Plaintiff's serious medical needs in violation of the Fourteenth Amendment; (iii) use of excessive force in violation of the Eighth Amendment; (iv) deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment; (v) denial of adequate conditions of confinement in violation of the Eighth Amendment; (vi) Defendant Monroe County's establishment and following of policies and procedures that violated constitutional rights; and (vii) gross negligence.

1

Talley was a Sergeant at the Monroe County Jail and/or Sheriff's Department.  Compl. ¶ 3 (Dkt. 49).

The matter is presently before the Court on the Report and Recommendation (R&R) issued by Magistrate Judge David R. Grand (Dkt. 49).   In the R&R, the Magistrate Judge recommends granting Defendants' motion for summary judgment (Dkt. 32) and denying Plaintiff's motion to amend his complaint (Dkt. 27).  Plaintiff filed objections to the R&R (Dkt. 52),[2] to which Defendants filed a reply (Dkt. 54).  The Court reviews de novo any portion of the R&R to which a specific objection has been made.  Fed. R. Civ. P. 72(b).

The factual background and legal standards governing this case have been sufficiently set forth by the Magistrate Judge in his R&R, and need not be repeated here.  For the reasons that follow, the Court accepts the recommendation contained in the R&R, overrules Plaintiff's objections, grants Defendants' motion for summary judgment (Dkt. 32), and denies Plaintiff's motion to amend (Dkt. 27).

## II.    ANALYSIS

Plaintiff raises five objections to the R&R: (i) that Defendant Lee used excessive force against him by kicking him in the head, and that Defendants' removal of his mattress led to constitutionally inadequate conditions of confinement; (ii) that the delay in receiving medical treatment after he sustained injuries in a fight constituted deliberate indifference to his serious

---

[2] Although there are two separate docket entries labeled as Plaintiff's objections to the R&R (Dkts. 52, 53), the two documents are identical.  The Court, therefore, need not separately consider the later-filed document.

medical needs, and that his transfer to "G Unit"[3] was done with deliberate indifference to a serious risk to his safety; (iii) that Defendants' attorney withdrew from this case; (iv) that Plaintiff should be allowed to amend his complaint to assert claims against Monroe County Circuit Judges, and (v) that he should be allowed to amend his complaint to assert claims against a psychiatrist. The Court addresses each of these objections in turn and, for the reasons that follow, overrules each objection. The Court, therefore, grants Defendants' motion for summary judgment (Dkt. 32) and denies Plaintiff's motion to amend his complaint (Dkt. 27).

### A. First Objection

Plaintiff first objects to the R&R's analysis of the January 30, 2010 incident. Plaintiff asserts that, on that date, he was "kicked in the head" by Defendant Lee. Obj. at 1-2 (Dkt. 52). Plaintiff maintains that Defendants Lee, Talley, and Massengill held a "hallway interview" regarding the incident, that Defendant Talley called Plaintiff a liar during the interview, and that Plaintiff was given a medical exam and aspirin. Id. at 2. Plaintiff states that Defendants removed his mattress for 24 hours as punishment, and that he ended up sleeping for four days without a mattress, resulting in "frost-bite on both sides of [his] hipbone." Id. Plaintiff argues that the jury should decide the issue of whether Defendant Lee kicked him in the head. Id. at 3. Plaintiff also argues that he has disabilities and "should not be discriminated against . . . for being slow to react" to being kicked. Id. In reply, Defendants argue that Plaintiff's objection merely rehashes past allegations which are inconsistent with the video of the incident, and that Plaintiff has not presented any law that would support an excessive force claim. Reply at 1-2 (Dkt. 54).

---

[3] The record reflects that the inmates were assignment to various "dayrooms" or "units." Cell Moves Chart (Dkt. 32-10). Between December 200 and July 2010, Plaintiff was transferred into different units multiple times. Id.

In regard to the January 30, 2010 incident, the R&R concludes that the record, and in particular the video recording of the incident, clearly shows that Defendant Lee did not use more than <u>de minimus</u> force in "making a nudging motion with his foot which did not cause any noticeable reaction whatsoever" by Plaintiff.  R&R at 12.  The R&R further noted that Plaintiff had no visible injury from this incident and declined to go to the medical cell.  <u>Id.</u>  In a footnote, the Magistrate Judge noted that because the January 30, 2010 incident resulted in at most a <u>de minimus</u> injury that does not rise to the level of a serious medical need, and because Plaintiff declined subsequent medical care, Plaintiff cannot support a claim of deliberate indifference based on this incident.  <u>Id.</u> at 13 n.12.  Regarding the removal of Plaintiff's mattress for four days, the R&R concludes that under Sixth Circuit precedent, withholding a mattress for four days is not a sufficiently serious deprivation to satisfy the objective component of the test for an Eighth Amendment violation, and that Plaintiff has presented no evidence that would satisfy the subjective component.  <u>Id.</u> at 17-18.

Having carefully reviewed the R&R and the parties' arguments, the Court concludes that Plaintiff's first objection lacks merit.  First, the video of the incident unambiguously shows that any contact Defendant Lee made with Plaintiff or Plaintiff's mattress constituted a <u>de minimus</u> amount of force; therefore, Plaintiff's excessive force claim should be dismissed.  Second, the removal of Plaintiff's mattress for four days was not a sufficiently serious deprivation of life's necessities to violate Plaintiff's Eighth Amendment rights.  To the extent Plaintiff's claim of inadequate conditions of confinement in violation of the Eighth Amendment relies on the deprivation of the mattress, the count must be dismissed.

**1.  The claimed kick**

The Court begins with Plaintiff's argument that Defendant Lee used excessive force by

kicking him in the head, in violation of his rights under the Eighth and Fourteenth Amendments. The Court first notes that although Plaintiff was a pretrial detainee and not a convicted prisoner during the incidents in question, the "Due Process Clause of the Fourteenth Amendment extends the protection of the Eighth Amendment to pretrial detainees." Harrell v. Grainger Cnty., Tenn., 391 F. App'x 519, 522 (6th Cir. 2010); see also Barber v. City of Salem, Ohio, 953 F.2d 232, 235 (6th Cir. 1992) ("While a pretrial detainee does not enjoy protection of the Eighth Amendment, the Eighth Amendment rights of prisoners are analogous to pretrial detainees' due process rights under the Fourteenth Amendment."). "[T]he Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." Graham v. Connor, 490 U.S. 386, 395 n.10 (1989).

Defendants contend that Defendant Lee used only a de minimus amount of force and that he is entitled to qualified immunity. Def. Br. in Support of Mot. for Summ. J. at 8-9 (Dkt. 32). Qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The Court applies "a two-prong test to qualified immunity claims, determining whether the facts that a plaintiff has shown make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of the defendant's alleged misconduct." Barker v. Goodrich, 649 F.3d 428, 433 (6th Cir. 2011). Whether Defendant Lee's conduct "constituted excessive force in violation of the Eighth Amendment depends on whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 434. The Supreme Court has emphasized that, in assessing an excessive force claim, the "core judicial inquiry" is the nature of the force applied – in particular,

"whether it was nontrivial and was applied maliciously and sadistically to cause harm" – not the extent of the resultant injury. <u>Wilkins v. Gaddy</u>, 559 U.S. 34, 39 (2010). Finally, "[t]here is, of course, a <u>de</u> <u>minimus</u> level of imposition with which the Constitution is not concerned." <u>Ingraham v. Wright</u>, 430 U.S. 651, 674 (1977).

Plaintiff testified that he "was sleeping with [his] head down" when Defendant Lee "put the boot to [his] head." Pl. Dep. at 28 (Dkt. 32-3). Plaintiff further testified that it "[f]elt like a direct blow" and that Plaintiff "threw [his] hands up because [he] was angry at the time and being startled, being woke up like that." <u>Id.</u> at 29. Defendant Lee, testifying regarding this incident, stated that he was trying to wake up Plaintiff and he "nudg[ed] the mattress with [his] foot rather than bending over, giving the inmate a chance to hit, stab, hurt [him]." Lee Dep. at 35-36 (Dkt. 32-13).

The record includes a video of this incident. The video depicts Plaintiff sleeping on his mat in the hallway outside his cell.[4] At 7:18:27, an officer, Defendant Lee, approaches Plaintiff and extends his foot toward Plaintiff. Due to the quality of the video recording, it is unclear whether Defendant Lee's foot made contact with Plaintiff, the mattress, both, or neither. What is clear, however, is that this motion was done in a slow, unaggressive manner; it could be aptly characterized as a tap, or as the Magistrate Judge noted, a nudge. Furthermore, for the next 39-40 seconds of the video footage, Plaintiff appears to not move at all; it does not appear that he threw his hands up in immediate response to the touching. At 7:19:18, Plaintiff stood up and began moving around the hallway and common area; there is no visible indication that he was in pain or injured.

---

[4] Plaintiff testified that he understood it was against the Monroe County Jail guidebook rules to have his mattress outside his cell. Pl. Dep. at 23-24. Plaintiff stated that during a prior incarceration, he had received permission to sleep on his mattress outside his cell, and he assumed the same privilege would apply during his later detention at the Jail. <u>Id.</u> at 19-20.

Having carefully reviewed the video, the Court concludes that it is inconsistent with Plaintiff's testimony regarding the incident.  The Supreme Court has held that on a summary judgment motion, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  Scott v. Harris, 550 U.S. 372, 380 (2007).  Because the video recording blatantly contradicts Plaintiff's testimony about the "kick" such that no reasonable jury could believe it, the Court may not credit Plaintiff's version of the events.[5]

The medical evidence submitted also supports the de minimus nature of the force involved in Defendant Lee's contact with Plaintiff.  A medical report filled out on January 30, 2010 and signed by Defendant Massengill states that Plaintiff has "no visible signs of trauma," "no bruising," "no abrasion," "no lumps," and "no swelling."  1/30/10 Medical Report (Dkt. 32-7).  Defendant Massengill testified that she saw no marks or injuries on Plaintiff, and his vitals were normal.  Massengill Dep. at 25 (Dkt. 32-15).  Defendant Talley also performed a visual inspection of Plaintiff's head; she saw no visual lumps, bumps, or redness.  Talley Dep. at 36-37 (Dkt. 32-14).  Defendant Talley asserts that Plaintiff declined to go into the medical cell for observation.  Id. at 59-60.  Although the lack of an apparent injury is not dispositive, see Wilkins, 559 U.S. at 39, it further supports the minimal nature of the force used by Defendant Lee.

Based on the record evidence, and in particular the video, the Court concludes that there

---

[5] In his objections, Plaintiff seems to argue that his lack of immediate response to Defendant Lee's contact was due to Plaintiff's disabilities and "slow-ness to react."  Obj. at 3.  Regardless of the cause for Plaintiff's lack of initial response to the contact, the video contradicts Plaintiff's testimony that the tap was a "direct blow" to which he reacted by throwing up his hands in an angry, startled manner.

is no genuine issue of material fact as to the nature of the force at issue.  The mild and <u>de</u> <u>minimus</u> nature of the force applied makes clear that Defendant Lee was not acting "maliciously and sadistically to cause harm."  <u>Id.</u>; <u>see</u> <u>also</u> <u>DeWalt v. Carter</u>, 224 F.3d 607, 620 (7th Cir. 2000) ("Officer Smith's simple act of shoving Mr. DeWalt qualifies as the kind of <u>de</u> <u>minimus</u> force that does not constitute cruel and unusual punishment.").  Because there was no violation of Plaintiff's constitutional rights, Defendant Lee is entitled to qualified immunity.

Plaintiff does not specify whether, in addition to forming the basis of his excessive force argument, the claimed kick also serves as a ground for his deliberate indifference claims. Regardless, due to the lack of noticeable injury resulting from the kick and the fact that Plaintiff refused medical care, the Court concludes that there is no evidence of a "sufficiently serious medical need" required to sustain a deliberate indifference claim.  <u>See</u> <u>Burgess v. Fischer</u>, 735 F.3d 462, 476 (6th Cir. 2013) (noting that a medical need is sufficiently serious for purposes of a deliberate indifference claim if "it has been diagnosed by a physician that has mandated treatment or it is so obvious that even a lay person would easily recognize the need for medical treatment").  The Court therefore dismisses Plaintiff's excessive force claim and any deliberate indifference claim premised on the January 30, 2010 incident.

### 2.  The removal of the mattress

The Court next turns to Plaintiff's assertion that he was deprived of his mattress for four days.  The Court agrees with the Magistrate Judge that Plaintiff's claims regarding the removal of his mattress are best characterized as supporting his conditions-of-confinement count in the complaint.[6]  The Supreme Court has explained that prison officials "must provide humane

---

[6]  In analyzing the conditions-of-confinement claim, which Plaintiff asserted as an Eighth Amendment violation, the R&R correctly notes that as a pretrial detainee, Plaintiff is not protected under the Eighth Amendment.  However, "[w]hile a pretrial detainee does not enjoy

conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (citations and quotation marks omitted). An Eighth Amendment conditions-of-confinement claim contains both an objective and subjective component. Wilson v. Seiter, 501 U.S. 294, 298 (1991). The objective component requires the plaintiff to show a deprivation so significant that it denies him "the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). The subjective component "requires a finding of deliberate indifference, that is, that the official acted or failed to act despite his knowledge of a substantial risk of serious harm. . . . An official's knowledge of the risk may be demonstrated through circumstantial evidence and inference . . . ." Barker v. Goodrich, 649 F.3d 428, 434 (6th Cir. 2011).

In Grissom v. Davis, 55 F. App'x 756, 757-758 (6th Cir. 2003), the Sixth Circuit concluded that a plaintiff who asserted she was deprived of a mattress for seven days did not allege facts "that, if proven, would rise to the level of the serious deprivation and deliberate indifference required to support an Eighth Amendment claim." The court noted that the plaintiff did not present any evidence that the mattress restriction "deprived her of basic human needs or caused her to suffer serious harm." Id. Nor did the plaintiff demonstrate that the defendants "recklessly disregarded a substantial risk of harm to her health or safety when placing her on the

---

protection of the Eighth Amendment, the Eighth Amendment rights of prisoners are analogous to pretrial detainees' due process rights under the Fourteenth Amendment." Barker at 235 (citations omitted). The R&R therefore construed Plaintiff's conditions-of-confinement claim as arising under the Fourteenth Amendment Due Process Clause. R&R at 16. Although Plaintiff was represented by counsel at the time he filed his complaint, Plaintiff's former counsel withdrew from the case on May 13, 2013. Because Plaintiff is presently proceeding pro se, this Court also adopts a liberal construction of the complaint, and construes the conditions-of-confinement count as though it were brought under the Fourteenth Amendment. See Vandiver v. Prison Health Services, Inc., 727 F.3d 580, 585 (6th Cir. 2013) ("[A] pro se plaintiff is entitled to have his complaint liberally construed." (citations omitted)).

mattress restriction." Id. at 758.

In this case, Defendant Lee states that he took Plaintiff's mat and told Plaintiff that he was taking it for 24 hours. Lee Dep. at 20. Plaintiff asserts in his complaint and his objections that he was without a mattress for four days. Obj. at 1-2, compl. ¶ 16. In his objections, Plaintiff also maintains that he suffered "frost-bite on both sides of [his] hipbone." Obj. at 2.

The Court concludes that Plaintiff's allegations of frostbite as a result of the mattress deprivation raise a claim that he suffered "serious harm" due to the mattress restriction. See also Thompson v. Cnty. of Medina, Ohio, 29 F.3d 238, 242 (6th Cir. 1994) (noting that a condition of confinement depriving the inmate of a "single, identifiable human need such as . . . warmth" may establish an Eighth Amendment violation). However, Plaintiff's assertions of frostbite are not borne out by the undisputed medical evidence in the record. A medical report dating from February 4, 2010 states, "Inmate concerned about bruising 'from sleeping on floor for four days.'" 2/4/10 Medical Report (Dkt. 32-9). The medical report notes that the right and left hip contain round areas of "dry patch skin" and "lightly bruised" skin. Id. The medical report makes no mention of frostbite. Symptoms as mild as light bruising and dry skin are not sufficient to show serious harm resulting from the mattress restriction. See, e.g., Grissom, 55 F. App'x at 757 (noting that the plaintiff alleged her "body was aching" as a result of the mattress restriction, but concluding that the plaintiff had not alleged that the mattress restriction caused serious harm).

What is more, Plaintiff has not presented any evidence establishing the subjective component of the test; there is no evidence that Defendant Lee, who ordered the mattress removal for a 24-hour period only, was acting in spite of his knowledge of a substantial risk of serious harm. For these reasons, Plaintiff's conditions-of-confinement claim, to the extent it is

based on the mattress restriction, is dismissed.[7]

### B.  Second Objection

Plaintiff next objects to the R&R's analysis of the June 14, 2010 incident.  Plaintiff asserts that, on that date, he was assaulted in G Unit by two inmates whom he refers to as "cage fighters."  Obj. at 4.  He maintains that this incident was directly caused by Defendant Lee, due to Defendant Lee's "hatred, racist prejudice, discrimination."  Id.  Plaintiff states that he had previously been removed from G Unit because of problems with a prisoner there, and in response to this incident, Defendants labeled Plaintiff a "rat" and "snitch" so that Plaintiff "would be assaulted, hurt, harmed by other prisoners."  Id.  Plaintiff asserts that he was later approached by Defendant Lee to return to G unit; once Plaintiff refused, "Lee became upset, angrey [sic] and called for back-up to force [Plaintiff] to comply with his orders . . . ."  Id.  Plaintiff argues that there is an issue of fact as to whether Officer Jan Ford was the prison official who transferred Plaintiff back to G Unit.  Id. at 4-5.

Plaintiff further argues that as a result of the fight on June 14, 2010, Plaintiff suffered a broken rib and punctured lung, but was denied medical treatment for eight hours.  Id. at 5.  Plaintiff states that in November 2012, Defendant Lee "again demonstrated his deliberate hatred for [Plaintiff] in giving praise and rewards, slap on back, high-fives, extra food, blankets to Michael J. Green, for almost killing [Plaintiff]."  Id.

In reply, Defendants argue that Plaintiff is unable to contradict the record evidence that

---

[7] In his first objection, Plaintiff also asserts that he filed complaints against Defendants with the state police, and that the state police detectives warned him he would be charged with a crime of filing a false police report if the video of the incident did not show Defendant Lee kicking Plaintiff in the head; Plaintiff states he has not been charged with such crime.  Obj. at 2-3.  Plaintiff does not explain the relevance of these assertions to the issue of Defendant Lee's actions and state of mind on January 30, 2010.  The Court is "not required to either guess the nature of or create a litigant's claim," Leeds v. City of Muldraugh, 174 F. App'x 251, 255 (6th Cir. 2006), and the Court need not reach these allegations.

he was in G Unit for more than a month before he was attacked by other inmates, and that Officer Jan Ford was the official who transferred Peterson to G Unit. Def. Reply at 2-3. Defendants contend that Plaintiff cannot establish that any named Defendant had any knowledge Plaintiff was in any danger. Id. at 3. Defendants argue that Plaintiff's allegations regarding Michael Green are irrelevant and do not establish any wrongdoing. Id. at 3-4.

In analyzing the June 14, 2010 incident, the R&R construes Plaintiff's arguments as raising two claims: (i) a claim of deliberate indifference to his serious medical needs based on Plaintiff's injuries after the fight, and (ii) a claim that transferring Plaintiff to G Unit resulted from Defendants' deliberate indifference to his safety. Regarding the claim of deliberate indifference to Plaintiff's serious medical needs, the R&R concludes that there is a question of fact as to the seriousness of Plaintiff's injuries resulting from the incident. R&R at 13-14. The R&R further concludes, however, that Plaintiff cannot establish that any of the Defendants acted with deliberate indifference; the R&R notes that none of the named Defendants played any role in the June 2010 incident. Id. at 14-16. The R&R further concludes that there is no evidence that in transferring Plaintiff to G Unit, any of the Defendants acted with deliberate indifference to Plaintiff's safety. Id. at 18. In a footnote, the R&R notes that it is unnecessary to reach Plaintiff's assertions regarding Michael Green, because they do not bear on the issues in the case. Id. at 8 n.10.

The Court overrules Plaintiff's second objection, for the following reasons: (i) there is no record evidence that any named Defendant played a role in the events of June 14, 2010; (ii) Plaintiff has not shown that any delay in receiving medical care constituted an Eighth Amendment violation; and (iii) there is no evidence that Plaintiff's transfer to G Unit resulted from any prison official's deliberate indifference to a serious risk to Plaintiff's safety.

12

## 1. Lack of evidence regarding role of named Defendants

As an initial matter, the Court agrees with the Magistrate Judge that there is no evidence that any of the named Defendants played any role in the events of June 14, 2010. According to the Cell Moves Chart (Dkt. 32-10), Officer Chad Zeunen, under the Supervision of Officer Jan Ford, transferred Plaintiff to G Unit on May 6, 2010. On June 14, 2010, Plaintiff was transferred to Unit H1 by Officer Eric Kiser under the supervision of Officer Juanita Bellair. Id. None of these officers is a named Defendant. Furthermore, the incident report for the June 14, 2010 fight in which Plaintiff was involved indicates that Officer Metz treated Plaintiff's visible injuries after the fight. Incident Report at 15 (Dkt. 32-16). It appears from the record that Defendant Talley received the incident report when she reported to work the next day, June 15, and that she prepared a supplement to the report that day. Id. at 15-16. However, there is no evidence that Defendant Talley, or any of the other individual Defendants, were on duty or played any role in the transfer or the fight and subsequent actions of June 14, 2010. See also Talley Dep. at 50 (stating that she had no involvement with the June 2010 incident); Lee Dep. at 25 (stating that he was not was not aware of being involved in any incident involving Plaintiff in June 2010).

Although Plaintiff asserts in his objections that Defendant Lee, and not Officer Ford, transferred him to G Unit, Plaintiff has presented no evidence to support this assertion. Plaintiff's self-serving allegations are insufficient to create an issue of material fact as to this point. See, e.g., Fanslow v. Chicago Mfg. Ctr., Inc., 384 F.3d 469, 483 (7th Cir. 2004) (noting that a plaintiff "cannot defeat summary judgment by submitting a self-serving affidavit that contains the bald assertion of the general truth of a particular matter." (citations and quotation marks omitted)). Because Plaintiff has not shown that any of the Defendants played a role in the June 2010 incident, Plaintiff's claims premised on this incident are subject to dismissal on this

basis alone.

### 2. Delay in receiving medical care

Plaintiff's claims regarding the June 14, 2010 incident are also subject to dismissal based on the merits of the claims. First, Plaintiff argues in his objections that there was an eight-hour delay between his sustaining injuries from the fight and his receiving medical treatment. The Court construes this as a claim that Defendants were deliberately indifferent to Plaintiff's serious medical needs. "The Fourteenth Amendment's Due Process Clause governs such claims presented by pretrial detainees, but 'are analyzed under the same rubric as Eighth Amendment claims brought by prisoners.'" Burgess v. Fischer, 735 F.3d 462, 476 (6th Cir. 2013). The Sixth Circuit has explained the standard for assessing a claim of deliberate indifference to an inmate's serious medical needs:

> We employ a two-prong test with objective and subjective components to assess such claims. First, we determine whether the plaintiff had a " 'sufficiently serious' medical need" under the objective prong. A medical need is sufficiently serious if it has been diagnosed by a physician that has mandated treatment or it is so obvious that even a lay person would easily recognize the need for medical treatment. Second, we determine whether the defendant had a "'sufficiently culpable state of mind'" in denying medical care under the subjective prong. There must be a showing of more than mere negligence, but something less than specific intent to harm or knowledge that harm will result is required. The defendant must have "[k]nowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs." Where the plaintiff has received some medical treatment, "federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." However, it is possible for the treatment provided to be "so woefully inadequate as to amount to no treatment at all."

Id. (citations omitted).

Plaintiff testified that late in the night on June 14, 2010, or early in the morning of June 15, 2010, two inmates attacked him without provocation in G Unit. Pl. Dep. at 70-76. The incident report states that after the fight, around 4:00 a.m., Officer Metz cleaned up Plaintiff and

gave him bandages and antibiotic ointment.  Incident Report at 3-4, 14.  The summary of the incident report states, "Inmate Peterson requested medical attention," id. at 3, and the report later states that "Inmate Peterson did not ask for medical treatment until the morning and at which time R/O advised inmate Peterson that the medical staff would be into work in about an hour from the time that he requested medical treatment."  Id. at 15.  Plaintiff testified that he asked for medical care soon after the fight, and "every hour [he] was begging the officer to take [him] to the hospital."  Pl. Dep. at 90-91.  Later in the morning of June 15, Plaintiff was sent to Mercy Hospital for x-rays; after the x-ray results were received, Plaintiff was transferred back to the Hospital for treatment of a fracture.  Incident Report at 16.  Plaintiff ultimately stayed at the hospital for five days for treatment of a broken rib and pneumothorax.

Plaintiff argues that the delay between sustaining the injuries and being sent to the hospital violated his constitutional rights.  The Court rejects this argument.  The Sixth Circuit has held that an "inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed."  Napier v. Madison Cnty., Ky., 238 F.3d 739, 742 (6th Cir. 2001) (citations omitted).  Plaintiff has offered no evidence that the delay in transferring him to the hospital had a detrimental effect on his treatment.

Furthermore, Plaintiff has not shown that any prison official actually had "[k]nowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs." Blackmore, 390 F.3d at 896 (internal quotation marks omitted).  Although Officer Metz noticed "a small cut above [Plaintiff's] right eye and a small abrasion on his left arm," Incident Report at 14, there is no indication that he or another officer was actually aware of the serious nature of Plaintiff's injuries.  Absent evidence of this subjective prong of the deliberate indifference test,

15

Plaintiff cannot succeed on his deliberate indifference claim.

### 3. Transfer into G Unit

The Court next turns to Plaintiff's conditions-of-confinement argument. Plaintiff seems to argue that his transfer into G Unit and the subsequent attack on him by the other inmates was engineered by prison officials based on their animus toward him. In support of this argument, Plaintiff references an "affidavit" of Michael Green. The "affidavit" in question is a handwritten, unsigned document purporting to contain averments of Michael Green to the effect that (i) Green, a neighbor of Plaintiff, was arrested for assault against Plaintiff, and (ii) while in jail, Green was congratulated by Defendant Lee for attacking Plaintiff. (Dkt. 38 at 6-7). Plaintiff also submitted a police report indicating that a person named Michael Joseph Green was arrested on November 13, 2012 for pointing a shotgun at Plaintiff. (Dkt. 47 at 20-31).

The Court rejects Plaintiff's arguments premised on the "affidavit" of Green. On this summary judgment motion, it would not be proper for the Court to consider the unsigned "affidavit." See, e.g., Wingz and Thingz 1 v. Penn Star Ins. Co., __F. App'x__, 2013 WL 6438678, at *1 (6th Cir. Dec. 9, 2013) ("The district court properly rejected plaintiff's unsigned and unsworn 'affidavits.'" (citations omitted)). Furthermore, as the Magistrate Judge points out, Plaintiff has not shown how Green's purported testimony is relevant to the analysis before the Court regarding the actions of the Defendants in June 2010.

Because Plaintiff is pro se, the Court will also construe and consider Plaintiff's conditions-of-confinement claim as an argument that prison officials transferred Plaintiff into G Unit with deliberate indifference to a serious risk to his safety. See Farmer v. Brennan, 511 U.S. 825, 837 (1994) ("We hold . . . that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows

of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."). "To demonstrate deliberate indifference, an inmate must present evidence from which a trier of fact could conclude that the official was subjectively aware of the risk and disregarded that risk by failing to take reasonable measures to abate it." Greene v. Bowles, 361 F.3d 290, 294 (6th Cir. 2004) (citations omitted).

In support of his conditions-of-confinement claim, Plaintiff references an encounter with another inmate, Fleetwood, in G Unit. The record indicates that Plaintiff was in G Unit from December 14, 2009 to February 25, 2010; he was transferred out of G Unit on February 25 and, on May 6, 2010, transferred back into G Unit due to "tension in Dayroom K." Cell Moves Chart. An incident report states that on February 25, 2010, an inmate named Zavier Fleetwood was "throwing soap at [Plaintiff] and trying to get him to fight." (Dkt. 32-11). The record further demonstrates that Plaintiff was in G Unit from May 6, 2010 to June 14, 2010 before he was attacked by other inmates; Plaintiff testified that he had not previously had encounters with the individuals who attacked him. Pl. Dep. at 70-76. Plaintiff did not submit a kite asking to be moved from G Unit. Id. at 145.

The Court concludes that the incident in which Fleetwood threw soap at Plaintiff in G Unit did not give rise to an excessive risk to Plaintiff's health or safety which the prison officials disregarded in transferring Plaintiff back to G Unit several months later. This conclusion is further supported by the fact that Plaintiff was in G Unit for a month without being attacked and that Plaintiff did not request to be moved from G Unit.[8] Furthermore, both times that Plaintiff

---

[8] As the Magistrate Judge noted in the R&R, the temporal gap between Plaintiff's transfer to G Unit and the fight with the other inmates undermines his claim that Defendants allegedly identified him as a "snitch" or "rat" in an attempt to cause other inmates to attack him.

experienced difficulty with fellow inmates, the officers promptly moved Plaintiff to a different unit; this weighs against a finding of deliberate indifference to Plaintiff's safety. See Yeadon v. Lappin, 423 F. App'x 627, 630 (7th Cir. 2011) (concluding that officials were not deliberately indifferent to an inmate's safety when they swiftly moved him to alternative housing after he was assaulted). Because Plaintiff has presented no evidence to show that Defendants, or any other prison officials, disregarded a serious risk to his health or safety, Plaintiff's conditions-of-confinement claim is subject to dismissal.

## C. Third Objection

In his third objection, Plaintiff seems to argue that in an April 22, 2013 order, Defendants' counsel withdrew from the case. This objection is without merit. On April 22, 2013, Plaintiff's former counsel Shawn C. Cabot filed a motion to withdraw (Dkt. 22). Concurrence in the motion was granted by opposing counsel. Id. Eastern District of Michigan Local Rule 7.1(a), regarding concurrence, requires movants to ascertain whether a motion will be opposed or whether opposing counsel will concur in the relief requested by the motion. Defendants' counsel's concurrence in Cabot's motion to withdraw merely indicates that Defendants' counsel would not oppose that motion; it does not mean, as Plaintiff appears to believe, that Defendants' counsel himself withdrew from the matter. As there has been no order of withdrawal for Defendants' counsel, and because the issue of whether defense counsel withdrew from the case creates no error of which Plaintiff could complain, Plaintiff's third objection lacks merit and is overruled.

## D. Fourth and Fifth Objections

Plaintiff's remaining objections relate to the R&R's denial of Plaintiff's motion to amend (Dkt. 27). The document in question is titled "Complaint and Jury Demand" and seeks to bring

claims against Monroe County Circuit Judge Joseph A. Costello, Jr., Chief Judge Michael W. LaBeau, psychiatrist Mark Weliver, and Monroe County.  The Magistrate Judge construed this document as a motion to amend under Federal Rule of Civil Procedure 15.  R&R at 20-21.  The Magistrate Judge denied the proposed amendment on futility grounds, noting that Judge Costello and Judge LaBeau enjoy absolute immunity from suit for actions arising in connection with the discharge of their judicial duties, and stating that Plaintiff makes no specific allegations of wrongdoing against Weliver or Monroe County.  Id.

In his fourth and fifth objections, Plaintiff reasserts arguments he made in his request to amend his complaint.  His arguments against Judge Costello, Judge LaBeau, and Weliver are premised on actions that these officials took in a criminal case brought against Plaintiff, People of the State of Michigan v. Peterson (Case No. 09-38067-FH) (Dkt. 52 at 14-17).  Although Plaintiff's specific arguments in these objections are difficult to discern, Plaintiff seems to contend that Judge Costello removed Plaintiff's attorney,[9] lied that he did not appoint Plaintiff's attorney, and refused to hear an "issue of prejudice."  Obj. at 7-8.  Plaintiff asserts that Judge LaBeau "allowed Plaintiff to suffer physically and mentally."  Id. at 8.[10]  Finally, Plaintiff asserts that Weliver "gave a false misleading statement that . . . Plaintiff initiated June 14, 2010 assault [sic]."  Id. at 9.

Plaintiff's allegations against Judge Costello, Judge LaBeau, and Weliver have been sufficiently addressed, and rejected, by the Magistrate Judge in the R&R.  The Court agrees with

---

[9] Court orders from the criminal case attached to Plaintiff's objections indicate that Plaintiff's original attorney, Steve Hyder, was later replaced by attorney James Davies, "as pursuant to a local administrative order Mr. Hyder did not possess the requisite years of experience given the underlying charges."  (Dkt. 52 at 15).

[10] As the R&R noted, it appears that Judge LaBeau, in a letter responding to an apparent inquiry or appeal from Plaintiff, informed Plaintiff that he did not possess the authority to review Judge Costello's orders.  (Dkt. 27 at 21).

the Magistrate Judge that Judge Costello and Judge LaBeau enjoy absolute judicial immunity. See Leech v. DeWeese, 689 F.3d 538, 542 (6th Cir. 2012) ("It is well-established that judges enjoy judicial immunity from suits arising out of the performance of their judicial functions." (citation omitted)).  Furthermore, Plaintiff has stated no cognizable claim against Weliver or Monroe County, and the Court "is not required to either guess the nature of or create a litigant's claim."  Leeds v. City of Muldraugh, Meade Cnty., Ky., 174 F. App'x 251, 255 (6th Cir. 2006). Because Plaintiff's proposed amended complaint states no cognizable claims, the Court overrules Plaintiff's fourth and fifth objections and accepts the R&R's recommendation to deny Plaintiff's motion to amend (Dkt. 27).[11]  See Carson v. United States Office of Special Counsel, 633 F.3d 487, 495 (6th Cir. 2011) (holding that leave to amend should be denied when amendment would be futile).

### E.  Miscellaneous Objections (Dkts. 42, 46)

In addition to the objections Plaintiff filed to the R&R (Dkt. 52), Plaintiff also filed various miscellaneous objections on the docket (Dkts. 42, 46).  Plaintiff objects to the Magistrate Judge's order (Dkt. 40) denying Plaintiff's motion to suspend filing fees (Dkts. 35, 36), denying Plaintiff's motion to show cause regarding counsel's withdrawal (Dkt. 35), and terminating Plaintiff's "Motion to Dismiss Summary Old and New Evidence" (Dkt. 38).  Plaintiff also

---

[11] Plaintiff has not raised objections to the remaining portions of the R&R, including the R&R's rejection of Plaintiff's policy or custom claim against the County of Monroe, the dismissal of Plaintiff's claims brought under the Eighth Amendment, and the dismissal of Plaintiff's state law claims.  The Court has reviewed these portions of the R&R for clear error, has found no such clear error, and accepts the recommendation contained in these parts of the R&R.  The Court further notes that Plaintiff's filing of objections against some parts of the R&R does not preserve his right to object, on appeal, to the remainder of the R&R.  See Smith v. Detroit Fed'n of Teachers Local 231, Am. Fed'n of Teachers, AFL-CIO, 829 F.2d 1370, 1373 (6th Cir. 1987) ("[M]aking some objections but failing to raise others will not preserve all the objections a party may have.").

objects to the Magistrate Judge's notice of determination of motion without oral argument (Dkt. 44).[12]

A party may object to a magistrate judge's non-dispositive orders. Fed. R. Civ. P. 72(a). "The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Id.

Plaintiff has not shown that the Magistrate Judge's orders were clearly erroneous or contrary to law. Plaintiff's objections to the order denying Plaintiff's motion to show cause assert that Plaintiff "was talking about Defense Attorney S. Randall Field withdrawal . . . and his motion for summary judgment was wrongful . . . ." (Dkt. 42). However, as the Court has previously noted, Defendants' counsel has not withdrawn from this case. Furthermore, the Magistrate Judge, in his order denying without prejudice Plaintiff's motion to waive/suspend filing fees, correctly noted that parties are generally not required to pay filing fees for filing motions or other papers in the Eastern District of Michigan, and that should Plaintiff wish to appeal any ruling, he may at that time file appropriate paperwork to seek relief from associated costs or fees. 8/2/2013 Order (Dkt. 40). Plaintiff has pointed to no clearly erroneous aspect of this analysis.

Nor was it clearly erroneous for the Magistrate Judge to deem Plaintiff's "Motion to Dismiss Summary Old and New Evidence" as part of Plaintiff's response to Defendants' motion for summary judgment, and to, accordingly, administratively terminate the motion. Finally,

---

[12] The Court notes that Plaintiff's objection to the notice of determination of motion without oral argument was filed more than four weeks after the entry of the notice, making the objection untimely. See 28 U.S.C. § 636(b)(1). It is established that "a party's failure to object to a magistrate judge's report within the time provided for filing objections operates as a waiver of that party's right to appeal." Bosley v. WMFJ Television, Inc., 245 F. App'x 445, 450 (6th Cir. 2007) (citations omitted). The untimeliness of Plaintiff's objection (Dkt. 46) is sufficient ground for overruling it, but because Plaintiff is pro se, the Court also reviews this objection on its merits.

under Eastern District of Michigan Local Rule 7.1(f)(2), the Magistrate Judge could properly order that a motion be determined without hearing, and no abuse of discretion has been demonstrated.

The Court, therefore, overrules Plaintiff's miscellaneous objections (Dkts. 42, 46).

## III.   CONCLUSION

For the reasons set forth above, the Court accepts the recommendation contained in the R&R (Dkt. 49), overrules Plaintiff's objections (Dkts. 42, 46, 52), grants Defendants' motion for summary judgment (Dkt. 32), denies Plaintiff's motion to amend his complaint (Dkt. 27), and dismisses the case with prejudice.

SO ORDERED.

Dated:  March 28, 2014                                  s/Mark A. Goldsmith
        Flint, Michigan                                 MARK A. GOLDSMITH
                                                        United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 28, 2014.

                                                        s/Deborah J. Goltz
                                                        DEBORAH J. GOLTZ
                                                        Case Manager